## MARY ANN LEFTWITCH *v.* J. G. W. LEFTWITCH.

Where a partner in a commercial firm obtained the administration for the liquidation of the concern after the decease of one of the partners, and in five years had not accounted for his administration, upon being sued by the administratrix of the deceased partner, it appearing that the books had been kept by him and were so defectively and negligently kept that it was impossible to make out a satisfactory statement from them of the respective indebtedness of the partners, he will be held accountable for the entries which appear against him, and will be required to furnish satisfactory vouchers for his offsetts.

APPEAL from the District Court of Iberville, *J. J. Burk*, J. *W. E. Edwards* and *T. A. Clarke*, for plaintiff. *J. Berry* and *Race* and *Foster*, for defendant. The judgment of the court was pronounced by

PRESTON, J. It appears that a mercantile firm existed, composed of *A. T. Leftwitch, John N. Wilson* and *J. G. W. Leftwitch*. The two first owned each three-eights interest in the concern, the last two-eighths. It was dissolved by the death of *A. T. Leftwitch*, in December, 1845. In January, 1846, the defendant, *J. G. W. Leftwitch*, as surviving partner claimed and obtained the administration and liquidation of the partnership, and it appears during his administration acquired the interest of the partner *Wilson*, so as to represent five-eighths of the concern. The plaintiff, *Mrs. Leftwitch*, was appointed administratrix of the estate of her deceased husband *A. T. Leftwitch*.

In December, 1847, about two years after his appointment, *Leftwitch*, the administrator, rendered the account of his administration, to which *Mrs. Leftwitch*, the administratrix of her husband, the deceased, filed oppositions on various grounds. The case remained untried for two years, and then, on motion of the administrator, was referred to auditors. In March, 1850, they made a report accompanied by the following statement:

"Your auditors would respectfully represent that the books were kept by *J. G. W. Leftwitch*, the defendant in this cause, and one of the partners in said firm, and that they have been kept in such a manner as to render it impossible to say with any degree of certainty how the firm stood at the close of the partnership. For the following reasons :

"1. No account of stock was kept; hence the most important account and key to the whole business is wanting.

"2. Less than half the cash account was found to be posted from the journal. See p. 75 ledger.

"3. Many entries are found in the ledger that have no foundation in the journal; therefore these entries are no evidence either of the receipt or payment of money without other vouchers.

"4. The account of *Sheffield* and *Lithgow*, as exhibited on the books, shows them to be indebted to the firm of *A. T. Leftwitch & Co.* in the sum of $3085 52, while accounts current and receipts from *Lithgow* and *Sheffield* show that the firm owed them.

"5. The sum of $1474 70 purports to have been charged in a certain memorandum book which your auditors have never seen, and only know that such is the fact from an entry in the journal at the close of each month, setting forth such an amount charged in memorandum book.

"6. Each of the partners in the firm are credited with so much stock, and no stock account having been kept, there are no corresponding debits, consequently the books cannot be balanced.

"Your auditors, therefore, found it necessary to report from the journal the entire business of the firm as there entered. But we regret to be compelled to state, that after all this labor, we were only the more thoroughly convinced that the books were kept in a very loose and careless manner ; because the credit side of cash is greater by $3875 than the debtor side, which is impossible when the books are regularly kept. See p. 75 reported.

"Your auditors would thereupon respectfully state, that after a careful examination of the books and papers placed in their possession, they are clearly of the opinion that the assets of the late firm of *A. T. Leftwitch & Co.* amounted to a considerable sum more than their liabilities, and would therefore respectfully suggest, that *J. G. W. Leftwitch*, the defendant in this cause, be held to abide by his own entries in the journal as re-posted in the ledger, and that he be charged with the same; and, also, that he be allowed a credit for all the liabilities of the firm which he may show, by voucher or otherwise, has been paid by him.

"We would also state, that many of the vouchers placed in our hands appear in the books; these we have rejected, because in the following statement (which we respectfully submit as the result of our labors) the balance of each amount, whether a debit or credit, only is considered.

"Your auditors would also respectfully state, that they have carefully examined the account as filed by the defendant in this cause, and that it is their opinion it ought to be rejected as having been founded in error, and consequently the conclusions there arrived at are wrong."

LEFTWITCH
v.
LEFTWITCH.

These statements were not controverted in his answer by the administrator. We concur, therefore with the auditors in opinion, that his account should be rejected and the account of the auditors substituted in its stead, subject to all his reasonable objections; and their report, like that of other auditors, should be regarded as correct, until clearly shown to be incorrect by oppositions. We feel the force of this remark peculiarly in the present case, for it is presented by the defendent in his accounts, oppositions and arguments, in such an intricate manner that after giving to it all the consideration consistent with our duty to other litigants, we may possibly do him injustice from not understanding his case. In his capacity of surviving partner and administrator, it was his duty, in one year, to wind up the partnership and render a clear account, accompanied by vouchers, so that it might be easily understood, and to have afforded every facility to close it with the least possible delay. Now that five years have elapsed, a very plain account, extracted with immense labor by the auditors from books badly kept by the defendant, is attacked by objections which, with much labor, we find it very difficult to understand.

The auditors can give no account of the stock of the partnership. They therefore charge the defendant with the accounts found in the journal kept by him to the credit of the firm. They credit him with the monies drawn by the partners and with a large account to the credit of the firm ascertained not to be due. They credit him with all payments for which he has furnished vouchers, and all others ascertained by them to have been paid; and charge him, in favor of the widow and administratrix of *A. T. Leftwitch,* with three-eighths of the balance.

The defendant opposed the report on the ground that claims of the firm to the amount of $2716 with which he was charged, he had stated in the account rendered by him two years before, had not been collected, and contends that his statement is to be taken for granted, because not then opposed. The oppositions of *Mrs. Leftwitch* to that account were broad enough to enable the court, with the statement of the auditors, to reject it entirely. The defendant should have shown, in opposition to the report of the auditors, that he had not yet collected these accounts, and should have accounted for his failure to collect them.

A large item of these debts, amounting to $1290 81, was due by *Leftwitch* and *Wilson,* as owners of a sugar plantation. Being the principal partners in the mercantile firm, it is not to be presumed that this debt was collected, but rather that it remained unpaid, subject to the settlement of the concern. *Leftwitch's* half of the debt should be deducted from the balance found by the auditors in favor of his widow and administratrix.

The defendant has further sufficiently shown, that about four hundred and fifty dollars have been paid out of the funds of the partnership on account of individual liabilities of *A. T. Leftwitch* and his succession. Five-eighths of this amount should be deducted from the balance found by the auditors in favor of his succession. For the same reason we are inclined to think five-eighths of a medical bill paid *Dr. Clements,* should be deducted from the judgment. Also, three-eighths of an account settled with *Nathan Gilbert* should be deducted. We are unable to say that any other items claimed by the defendant should be deducted.

The defendant insists that a final judgment should not be rendered against him, because, as appears by the account he rendered in 1847, the firm owed debts to the amount of $1034, for which he is bound *in solido* with the succession of his deceased partner. He has furnished no evidence of the fact, much

less that the debts are still due. And even if they are, it is not a sufficient rea- <span style="float:right">LEFTWITCH</span>
son that he should retain any longer the funds of the representative of his <span style="float:right">*v.* LEFTWITCH.</span>
deceased partner.

On the trial of the case he unsuccessfully applied to the court for permission to withdraw some of his claims, and took a bill of exceptions, and now contends that at all events judgment of non-suit alone should have been rendered as to those claims. The controversy as to these accounts has been pending five years, and it is but just and reasonable that *Mrs. Leftwitch* should have them finally closed, and a decree for the balance due her as administratrix of her husband's estate.

It is therefore decreed, that the judgment of the district court be reversed, and that *Mary Ann Leftwitch*, in her capacity of administratrix of the succession of *A. T. Leftwitch*, recover from *Jessee G. W. Leftwitch*, the sum of one thousand one hundred and twenty-one dollars and eighty-five cents, with legal interest from this date, and that he pay all costs in the district court; the appellee to pay the costs of this appeal.